UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRIME INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>       v.<br><br>NEW YORK HARBOR JET SKI, LLC, and DENISE THOMAS, Individually and as Administrator of the Estate of JACQUELINE SPALDING, deceased,<br><br>    Defendants. | **Civil Action No.**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C §§ 2201 AND 2202, THE FEDERAL DECLARATORY JUDGMENT ACT** |

  Plaintiff, Prime Insurance Company ("Prime"), by and through its attorneys Kennedys CMK, LLP, as and for its complaint for declaratory judgment, alleges:

## NATURE OF THIS ACTION

  1. This action seeks judgment declaring the rights and duties of Prime Insurance Company ("Prime") and defendant New York Harbor Jet Ski, LLC ("New York Harbor Jet Ski") under a certain policy of liability insurance with respect to certain claims that have been made or may be made against New York Harbor Jet Ski by Denise Thomas, as an individual and as the administrator of the Estate of Jacqueline Spalding, which claims arise from an incident that occurred on August 1, 2020 in the East River, at or near the Willis Avenue Bridge, in Bronx County, New York.

## THE PARTIES

  2. Prime is a corporation formed under the laws of the state of Illinois, having its principal place of business in Sandy, Utah. Thus, for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332, Prime is a citizen of the states of Illinois and Utah.

3. Upon information and belief, defendant New York Harbor Jet Ski is a limited liability company formed under the laws of the state of New Jersey and has its principal place of business in the state of New Jersey.

4. On information and belief, the individual member(s) of New York Harbor Jet Ski are citizens of the state of New Jersey.

5. Upon information and belief, defendant Denise Thomas is a citizen of the state of New York.

6. The Surrogate's Court, New York County, appointed defendant Denise Thomas to be the administrator of the Estate of Jacqueline Spalding.

7. Upon information and belief, on the date of her death, decedent Jacqueline Spalding was a citizen of the state of New York, such that pursuant to 28 USC §1332(c)(2), defendant Denise Thomas, in her capacity as the administrator of the Estate of Jacqueline Spalding, is a citizen of the state of New York

## JURISDICTION AND VENUE

8. This declaratory judgment action is brought pursuant 28 U.S.C §§ 2201 and 2202, the Federal Declaratory Judgment Act.

9. There is complete diversity of citizenship as between plaintiff Prime, a citizen for purposes of diversity jurisdiction of the states of Utah and Illinois, defendant Denise Thomas, individually and in her capacity as the administrator of the Estate of Jacqueline Spalding, a citizen of the state of New York, and New York Harbor Jet Ski, a citizen of the state of New Jersey, such that this court possesses jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

10. The amount in controversy is expected to exceed $75,000 exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in the within judicial district.

12. This Court has personal jurisdiction over each defendant because each defendant either resides in, conducts business within, and/or has purposely availed itself of the courts of the state of New York.

13. An actual and justiciable controversy exists among the parties as to the rights, responsibilities and obligations of Prime and New York Harbor Jet Ski under Prime policy SC20061143 ("the Prime Policy"), which policy names New York Harbor Jet Ski as Insured, and with respect to coverage under such policy for the claims, causes of action and damages that have been alleged by Denise Thomas against New York Harbor Jet Ski.

## FACTUAL ALLEGATIONS

### A. Underlying Action

14. On November 29, 2020, New York Harbor Jet Ski filed a Complaint for Exoneration from or Limitation of Liability in this Court under Case No. 2:20-CV-10004-CM.

15. On July 28, 2023, defendant Denise Thomas, in her individual capacity and as Administrator of the Estate of Jacqueline Spalding, filed an Answer to Complaint for Exoneration from or Limitation of Liability with Separate Claims ("the Estate's Answer").

16. The Estate's Answer alleges that on August 1, 2020, decedent Jacqueline Spalding was operating a 2019 Kawasaki JT1500 Jet Ski during a jet ski tour operated by New York Harbor Jet Ski.

17. The Estate's Answer further alleges that during the jet ski tour, decedent lost control of her jet ski and collided with the Willis Avenue Bridge, causing her to sustain injuries which proved fatal.

18. The Estate's Answer alleges that Jacqueline Spalding's accident was caused by the negligence of New York Harbor Jet Ski and demands damages on account of the Estate.

19. By letter dated August 23, 2023, Prime, through counsel, informed New York Harbor Jet Ski that it had reserved its right to deny coverage for the Estate's claims should it be determined that New York Harbor Jet Ski had failed to comply with certain conditions precedent to coverage under the Prime Policy.

20. By letter dated January 2, 2024 (Exhibit "A"; hereafter, "the Estate's counsel's letter"), counsel for the Estate provided details regarding the jet ski tour that resulted in Ms. Spalding's death, including details of the errors or omissions by New York Harbor Jet Ski on which the Estate's claims of negligence are based.

21. The errors and omissions of New York Harbor Jet Ski alleged by the Estate, if proved true, would preclude coverage under the Prime policy.

**B. The Prime Policy Issued to New York Harbor Jet Ski**

22. The Prime Policy (Exhibit "B") is a "manuscript policy of commercial liability insurance" (as stated in the Policy, "a negotiated agreement between the Insured and the Insurer") and, "as such differs significantly from other claims-made or occurrence liability policies offered by other insurance companies" (Policy, p.1).

23. The named Insured in the Prime Policy is New York Harbor Jet Ski, which company was represented to Prime to be in the business of renting jet skis and conducting guided jet ski tours in and about the waters of New York state.

4

24. The Prime Policy includes Rental Requirements Endorsement PSE-99-22, which states:

**RENTAL REQUIREMENTS ENDORSEMENT**

**PSE-99-22**

This Endorsement changes the terms and conditions of the Policy issued. Please read it carefully!

Subject to all other terms and conditions of the Policy, and all applicable Limits of Liability and Sub-limits, the following additional requirements govern and must be adhered to for coverage to apply.

**LIVERY**

Additional requirements for coverage to apply under the Policy:

1. The person who signs for, pays for, and assumes responsibility for all rental equipment must be a minimum age of 18 years old.
2. Basic safety rules and rules of conduct must be provided in writing to all participants and posted in a highly visible manner and place.
3. In the event a participant does not return at the scheduled return time, the Insured must try to contact the renter and commence a search if necessary.
4. All equipment must be used in compliance with the manufacturer's recommended uses as set forth in the owner/operator documentation and warnings. As a condition to coverage, the Insured is responsible for maintaining current copies of such documentation and knowing and complying with the manufacturer and industry standards for operation of all equipment used in its activities.

25. The Prime Policy also includes Personal Watercraft Requirements Endorsement POG-99-47, which states in relevant part:

This Endorsement changes the terms and conditions of the Policy issued. Please read it carefully!

Subject to all other terms and conditions of the Policy, and all applicable Limits of Liability and Sub-limits, the following additional requirements govern and must be adhered to for coverage to apply.

**PERSONAL WATERCRAFT**

Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of the Policy, the coverage provided by this Endorsement shall apply to Bodily Injury or Property Damage arising out of the use and/or operation of a Personal Watercraft, as long as the following additional requirements are fully satisfied.

**Personal use without scheduled operators**

Additional requirements for coverage to apply under the Policy:

5

1. Each Personal Watercraft must be inspected and maintained on a regular basis. The Insured must keep detailed written documentation on each inspection and maintenance. Each Participant must be instructed on the proper use and care of the equipment.

2. All equipment must be used in compliance with the manufacturer's recommended uses as set forth in the owner/operator documentation and warnings. As a condition to coverage, the Insured is responsible for maintaining current copies of such documentation and knowing and complying with the manufacturer and industry standards for operation of all equipment used in its activities.

4. Each Participant must be provided verbal and written instructions regarding the safe use and operation of a Personal Watercraft. The written instructions must be initialed by the Participant to show he/she understands and agrees to its terms.

8. Each Participant must review the local laws and administrative rules regarding Personal Watercraft and boat safety prior to participation and must adhere to such laws and rules while participating.

19. Operators of a Personal Watercraft must slow the Personal Watercraft to a "no wake" speed whenever the Personal Watercraft is within fifty (50) feet of a pier, dock, boathouse, boat ramp, people in the water, or any other vessel except other Personal Watercraft.

26. By its terms, coverage under the Prime Policy for the claims of the Estate of Jacqueline Spalding is subject to specific requirements set forth in the Policy.

27. The Prime Policy requires that "[a]ll equipment must be used in compliance with the manufacturer's recommended uses as set forth in the owner/operator documentation and warnings. As a condition to coverage, the Insured is responsible for maintaining current copies of such documentation and knowing and complying with the manufacturer and industry standards for operation of all equipment used in its activities."

28. The Prime Policy further requires as a condition of coverage that "[e]ach Personal Watercraft must be inspected and maintained on a regular basis. The insured must keep detailed written documentation on each inspection and maintenance. Each Participant must be instructed on the proper use and care of the equipment."

29. The Estate's counsel's letter details how the failure of New York Harbor Jet Ski to maintain the jet ski as required by the owner's manual is alleged to have caused Jacqueline

6

Spalding to lose control of the jet ski and collide with the Willis Avenue Bridge; among other things, from the beginning of the jet ski tour, Ms. Spalding is alleged to have "experienced problems" with the throttle and steering controls, which controls were "very sensitive," causing the jet ski to "swerve" and "almost hit[ting] boats, and causing Ms. Spalding to fall "very far behind" the rest of the group.

30. The Estate's counsel's letter avers that New York Harbor Jet Ski "fail[ed] to determine the seaworthiness of the vessels including their throttle controls."

31. The owner's manual for the Kawasaki JT1500 jet ski ("Exhibit C") requires that prior to using the watercraft, the owner must "check the operation of the throttle for binding, rough spots or excessive play." The manual also warns: "A stuck throttle can cause loss of control and an accident resulting in injury or death. If the throttle does not return freely and completely, do not ride and have it inspected by your Kawasaki dealer."

32. The owner's manual of the jet ski further provides "A JET SKI watercraft requires throttle (thrust) to steer and help you to avoid objects – you have no directional control when the engine is stopped. To avoid objects the engine must be running and throttle applied to steer away from objects. Always check the throttle and steering controls for proper operation before starting the watercraft."

33. Should it be determined by the finder of fact that New York Harbor Jet Ski had failed to check the operation of the throttle of the jet ski previous to giving it to Ms. Spaulding to ride, and that the throttle malfunctioned, proximately causing the collision that resulted in Ms. Spaulding's death, such failure of New York Harbor Jet Ski to comply with the policy condition of coverage to inspect and maintain "each personal watercraft" (Personal Watercraft Requirements Endorsement POG-99-47 condition #1), and to "comply[ ] with the manufacturer and industry

standards for operation of all equipment used in its activities" (Personal Watercraft Requirements Endorsement POG-99-47 condition #2), will preclude coverage under the Prime Policy for the claims of defendant Denise Thomas, individually and in her capacity as the administrator of the Estate of Jacqueline Spalding.

34. The Prime Policy requires as a requirement of coverage that "[b]asic safety rules and rules of conduct must be provided in writing to all participants and posted in a highly visible manner and place" (Rental Requirements Endorsement PSE-99-22, condition #2).

35. The Prime Policy also required, as a condition to coverage, that "[e]ach participant must be provided verbal and written instructions regarding the safe use and operation of a Personal Watercraft. The written instructions must be initialed by the Participant to show he/she understands and agrees to its terms" (Personal Watercraft Requirements Endorsement POG-99-47, condition #4).

36. The Prime Policy also required, as a condition to coverage, that "[e]ach participant must review the local laws and administrative rules regarding Personal watercraft and boat safety prior to participation and must adhere to such laws and rules while participating" (Personal Watercraft Requirements Endorsement POG-99-47, condition #8)

37. The Estate's counsel's letter avers that New York Harbor Jet Ski "fail[ed] to properly instruct and train the participants," including Ms. Spalding; according to counsel, New York Harbor Jet Ski Harbor merely provided only a "quick chat" about the operation of the jet ski and were only "asked to ride in a little circle."

38. New York Navigational Law § 73-a(2)(b) requires, in pertinent part, that a business that rents personal watercraft must "prior to permitting the use by such person of such personal watercraft or specialty prop-craft, explains and demonstrates to such person by video or actual in

8

water demonstration the operating procedure of such personal watercraft or specialty prop-craft and the use of such vessel's safety equipment."

39. New York Navigational Law § 73-a(2)(c) provides that "such person, after receiving the explanation and demonstration required pursuant to paragraph (b) of this subdivision, demonstrates to such livery operator or to such designated agent the ability to operate such vessel and use the applicable safety equipment."

40. Should it be determined by the finder of fact that New York Harbor Jet Ski failed to give Ms. Spalding "verbal and written instructions regarding the safe use and operation of a Personal Watercraft," and failed to have Ms. Spaulding "...review the local laws and administrative rules regarding Personal watercraft and boat safety prior to participation and must adhere to such laws and rules while participating" in the jet ski tour, which failures proximately caused the collision that resulted in Ms. Spaulding's death, such failure of New York Harbor Jet Ski to comply with these policy conditions of coverage will preclude coverage under the Prime Policy for the claims of defendant Denise Thomas, individually and in her capacity as the administrator of the Estate of Jacqueline Spalding.

41. Personal Watercraft Requirements Endorsement POG-99-47 condition 2 requires New York Harbor Jet Ski, as a condition of coverage, to "comply[ ] with the manufacturer and industry standards for operation of all equipment used in its activities."

42. New York Navigational Law §49 states:

1. No person shall operate a mechanically propelled vessel on the navigable waters of the state or any tidewaters bordering on or lying within the boundaries of Nassau and Suffolk counties, unless the operator is at least ten years old and is the holder of a boating safety certificate issued to him or her upon completion of a boating safety course approved by the commissioner, the United States Power Squadrons, the United States coast guard auxiliary or the United States sailing association for a powerboating course or courses which are approved by the commissioner.

9

43. The Harlem River, on which Ms. Spaulding's jet ski was traveling when it collided with the Willis Avenue bridge, is a navigable water of the state of New York.

44. The Hudson River, on which the jet ski tour embarked, is a navigable water of the state of New York:

> NJSA 52:28-4. Hudson river and bay of New York
>
> Article III. The state of New York shall have and enjoy exclusive jurisdiction of and over all the waters of the bay of New Yor k, and of and over all the waters of Hudson river, lying west of Manhattan island, and to the south of the mouth of Spuyten Duyvel creek, and of and over the lands covered by the said waters to the low-water mark on the westerly or New Jersey side thereof, subject to the following rights of property and jurisdiction of the state of New Jersey…[inapplicable text of statue omitted].

45. Section 73-A, <u>Regulations of personal watercraft and specialty prop-craft</u>, of Chapter 37 of the Consolidated Laws of New York states in relevant part:

> 2. Liveries. Notwithstanding the provisions of section forty-nine or seventy-one-d of this chapter, no livery shall lease, hire, or rent a personal watercraft or a specialty prop-craft to any person unless:
>
> (d) such person has presented genuine proof of identification and age; and except as provided in paragraph (f) of this subdivision, has demonstrated compliance with section forty-nine of this article, to such livery operator or the livery operator's designated agent prior to the time of leasing, hiring or renting such vessel;
>
> *(f) notwithstanding the provisions of paragraph (d) of this subdivision and subdivision one-a of section forty-nine of this article, a person over eighteen years of age may operate such personal watercraft or specialty prop-craft without the certificate required pursuant to section forty-nine of this article **when such operation is restricted by the operator of such livery, or the livery operator's designated agent, to a specified area, no part of which shall be more than twenty-five hundred feet from the livery, location, or, if removed from the livery location, not more than five hundred feet from the livery operator or agent assigned by the livery operator to supervise such operation** and such personal watercraft or specialty prop-craft and/or the personal flotation device of the operator is clearly marked in such a manner as to be distinguishable by the operator of such livery or the livery operator's designated agent within the permitted areas of operation (emphasis added).

46. The Estate's counsel's letter avers that Ms. Spalding had not previously driven a jet ski, such that she did not possess the "approved boating safety certificate" required by New York law.

47. The Estate's counsel's letter avers that the jet ski tour was to "circle around Manhattan...to the Statute of Liberty," "then they headed towards the bottom tip of Manhattan," then proceeded to the Brooklyn Bridge and continued up the East River until the collision of Ms. Spalding's jet ski with the Willis Avenue bridge—such bridge being far further than "twenty five hundred feet from the livery location."

48. The Estate's counsel's letter avers that New York Harbor Jet Ski is liable by reason of its "failure to remain with the untrained crew."

49. The Estate's counsel's letter avers that Ms. Spalding was "very far behind the group" and, when she did catch up, "would again be left behind as they proceeded at the same fast pace they had previously been traveling at": "[t]he rest of the group was way ahead with Dave [the group leader] when the accident happened at the Willis Avenue Bridge."

50. The Estate's counsel's letter implies that at several points during the jet ski tour, Ms. Spalding's jet ski was "more than five hundred feet from the livery operator or agent assigned by the livery operator to supervise such operation."

51. Should it be determined by the finder of fact that New York Harbor Jet Ski rented a jet ski to Ms. Spaulding, a person who did not possess an "approved boating safety certificate," and that Ms. Spalding's jet ski was "more than five hundred feet from the livery operator or agent assigned by the livery operator to supervise such operation," in violation of New York law, such would violate the policy condition of coverage to "comply[ ] with the manufacturer and industry standards for operation of all equipment used in its activities" (Personal Watercraft Requirements

11

Endorsement POG-99-47 condition #2) and will preclude coverage under the Prime Policy for the claims of defendant Denise Thomas, on her own behalf and on behalf of the Estate of Jacqueline Spalding.

52. Requirement 19 of Personal Watercraft Requirements Endorsement POG-99-47 requires that the "[o]perators of a Personal Watercraft must slow the Personal Watercraft to a "no wake" speed whenever the Personal Watercraft is within fifty (50) feet of a pier, dock, boathouse, boat ramp, people in the water, or any other vessel except other Personal Watercraft."

53. The Estate's counsel's letter avers that the "guide instructor," throughout the jet ski tour, operated his jet ski and led the group at a high rate of speed, "abandoning" Ms. Spalding, such that she was forced to travel at a high rate of speed to "catch up" with the group, and causing her to collide with the Willis Avenue bridge at a high rate of speed, and certainly higher than a "no wake" speed, causing her injuries that resulted in her death.

54. The section of the owner's manual for the Kawasaki JT1500 jet ski ("Exhibit C") captioned, "Safety Information," cautions that unskilled operators such as Ms. Spalding should ride in "Smart Learning Operation" mode to "reduce the maximum watercraft speed":

- Ride within your skill limits. Riding too fast for your skills is one of the major causes of collisions.
  - Overspeed is one of the major causes of collisions.
  - Unskilled operators should use the Smart Learning Operation (SLO) mode, which reduces the maximum watercraft speed.

55. Should it be found that the New York Harbor Jet Ski "guide instructor" operated his jet ski at a high rate of speed, compelling Ms. Spalding, in order to catch up to the group, to operate her jet ski at a high rate of speed within fifty (50) feet of the Willis Avenue bridge, causing her jet ski to collide with the bridge, the actions of the operator would violate Requirement 19 of Personal Watercraft Requirements Endorsement POG-99-47 that the "[o]perators of a Personal

12

Watercraft must slow the Personal Watercraft to a "no wake" speed whenever the Personal Watercraft is within fifty (50) feet of a pier, dock, boathouse, boat ramp, people in the water, or any other vessel except other Personal Watercraft," such that the Prime Policy will not afford coverage for the claims of defendant Denise Thomas, on her own behalf and on behalf of the Estate of Jacqueline Spalding.

56. Should it be found that the New York Harbor Jet Ski "guide instructor" operated his jet ski at a high rate of speed, compelling Ms. Spalding, in order to catch up to the group, to operate her jet ski at a high rate of speed within fifty (50) feet of the Willis Avenue bridge, causing her jet ski to collide with the bridge, such actions would violate the policy condition of coverage to "comply[ ] with the manufacturer and industry standards for operation of all equipment used in its activities" (Personal Watercraft Requirements Endorsement POG-99-47 condition #2), such that the Prime Policy will not afford coverage for the claims of defendant Denise Thomas, on her own behalf and on behalf of the Estate of Jacqueline Spalding.

57. Prime reserves the right to rely upon such other facts as may revealed in discovery which would tend to prove the failure of New York Harbor Jet Ski to comply with any terms and conditions of coverage, such that the Prime Policy will not afford coverage for the claims of defendant Denise Thomas, on her own behalf and on behalf of the Estate of Jacqueline Spalding.

58. Prime has no remedy at law.

**WHEREFORE,** plaintiff Prime Insurance Company demands judgment as follows:

A. Declaring that Prime Insurance Company was not and is not obligated to defend or indemnify New York Harbor Jet Ski from the claims, causes of action and damages asserted by defendant Denise Thomas, on her own behalf and on behalf of the Estate of Jacqueline Spalding, or to pay any judgment that may be entered in favor of defendant Denise Thomas against New York Harbor Jet Ski;

B. Declaring that Prime may discontinue paying attorney's fees and other expenses on account of the defense of New York Harbor Jet Ski;

C. Declaring that such judgment is and shall be binding on all defendants to this action;

D. Providing such other and further relief as this Honorable Court deems just and equitable.

Dated: New York, New York
February 6, 2024

**KENNEDYS CMK LLP**

*David M. Kupfer*

David M. Kupfer
Sean Shoolbraid (Pending Admission)
570 Lexington Avenue, 8th Floor
New York, New York 10022
(212) 252-0004